**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| P & G, LLC, <br><br> and <br><br> FURIOSO DEVELOPMENT CORPORATION <br><br><br> Plaintiffs, <br> v. <br><br><br> CAMDEN SUMMIT PARTNERSHIP <br><br> and <br><br> CAMDEN SUMMIT, INC. <br><br><br> Defendants. | Civil Action No. 1:07-CV-929-JR <br><br> Oral Argument Requested |

**MOTION TO DISMISS COUNTS I AND II OF THE COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Camden Summit Partnership and Camden Summit, Inc. (collectively "Defendants") respectfully move this Court to dismiss Plaintiffs' Complaint against them for failure to state a claim upon which relief can be granted. In support of their motion, Defendants submit an accompanying memorandum of law and proposed order.

Dated: May 25, 2007   Respectfully submitted,

/s/ Allen M. Gardner

_____

Allen M. Gardner (Bar. No. 456723)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Phone: (202) 637-2200
Fax: (202) 637-2201

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| P & G, LLC,<br><br>and<br><br>FURIOSO DEVELOPMENT CORPORATION<br><br><br>Plaintiffs,<br>              v.<br><br><br>CAMDEN SUMMIT PARTNERSHIP<br><br>and<br><br>CAMDEN SUMMIT, INC.<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:07-CV-929-JR<br>)<br>)   Oral Argument Requested<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS COUNTS I AND II OF THE COMPLAINT**

Defendants Camden Summit Partnership, L.P. ("Camden Summit") and Camden Summit, Inc. ("Camden"), respectfully submit this Memorandum of Law in support of its Motion to Dismiss Counts I and II of the Complaint of P&G, LLC ("P&G") and Furioso Development Corporation ("Furioso").

**INTRODUCTION**

Plaintiffs ask this Court to rewrite the Termination Provision contained in a 2001 Development Agreement to give Plaintiffs a benefit for which they did not bargain. Plaintiffs' Complaint rests on the unsupportable contention that the term "cash due" does not mean "money presently owed" but instead means "moneys accruing but not currently (or potentially ever) owed." This is the sole, and purely legal, question presented by the first two counts of the Complaint and Plaintiffs cannot be correct. Plaintiffs' proposed reading of "cash due" not only tortures the term's everyday and commonsense meaning, it would run contrary to the structure of the rest of the Agreement and lead to absurd results.

In Counts I and II, Plaintiffs seek compensation for the termination of P&G's sole remaining economic interest in the building commonly known as the Roosevelt (the "Property"). The Agreement between P&G and Camden Summit based the termination price on a calculation involving the amount of cash due to P&G as annual incentive payments at the time of the termination. These incentive payments were contingent on the Property achieving a certain level of profitability, which, in fact, it never reached during the life of the Agreement. The Agreement specifically addressed this eventuality, stipulating that regardless of the amount of cash due as incentive payments, the minimum termination price would be $250,000. Accordingly, because at the time of the termination no cash in the form of annual incentive payments was due, the Agreement set the termination price at $250,000, which Camden Summit has offered to pay and P&G has refused to accept.

Plaintiffs object to this outcome contending that the termination price should be calculated based on hypothetical incentive payments accrued rather than cash actually due as incentive payments, as specified in the Agreement. The flaws in this argument are manifest.

*First*, it disregards the plain language of the Agreement by ignoring a critical term ("cash due") in order to redraft the contract more to P&G's liking. *Second*, it would lead to absurd results as it would render a significant provision of the Agreement superfluous. *Third*, it is contrary to the very structure of the Agreement in that it would grant P&G a windfall of performance-based incentive compensation – with no corresponding assumption of risk – even where the Property was far less profitable than the parties and the Agreement contemplated. This Court should reject Plaintiffs' attempts to rewrite the Agreement and dismiss Counts I and II of the Complaint.

## FACTUAL BACKGROUND

For the purposes of this Motion only, Defendants assume the facts as alleged by Plaintiffs in their Complaint. In March of 2000, P&G and Camden Summit, two real estate development companies, entered into a joint relationship to renovate the Roosevelt, located at 2101 16th Street Northwest, in Washington D.C. Compl. ¶ 9. P&G purchased the Roosevelt pursuant to a contract with the District of Columbia Financial Responsibility and Management Assistance Authority (the "Contract"). *Id.*

After executing several preliminary agreements, P&G and Camden ultimately signed a fully integrated Development Agreement (the "Agreement"), which assigned P&G's rights and obligations under the Contract to Camden Summit. Ex. D.[1] The Development Agreement obligated Camden Summit to compensate P&G for prior development efforts and share future expenses associated with resolving tenant claims. *Id.* In return for the assignment of its rights to Camden, P&G received the following compensation: (1) an "acquisition fee" of $250,000 intended to reimburse P&G for its prior development expenses; (2) a "development fee" of $2.25 million; and (3) the right to receive *potential* future "Incentive Payments" depending on the

---

[1]     All Exhibits are attached to Plaintiffs' Complaint.

profitability of the property. Compl. ¶ 11. Under the Agreement, Incentive Payments to P&G consisting of 1.75% of the gross revenue of the property were subordinated to Camden Summit's receipt of "Ten Percent (10%) cumulative compounded annual return on its Investment" (the "Preferred Return"), which meant that the Incentive Payments were triggered *if and only if* Camden Summit realized its Preferred Return. Ex. D. Otherwise, the Incentive Payments were subordinated, and payment on the unpaid portion was to be deferred and paid "in the subsequent year or years *so long as* the Preferred Return has been paid" to Camden Summit. *Id.* (emphasis added).

The Roosevelt investment proved to be less profitable than the parties had hoped and Camden Summit was never able to achieve the Preferred Return. Accordingly, no Incentive Payment ever became due to P&G under the Agreement. These facts are undisputed.

On October 3, 2006, P&G notified Defendants of its desire to terminate the Agreement and "put" its interest in the Roosevelt to Camden Summit in accordance with the terms of the Agreement's "Termination Provision." That provision permitted either party to terminate the relationship and effect a compulsory purchase by Camden Summit of P&G's interest in the Roosevelt. In the event that a "Termination" occurred, the Development Agreement provided that:

> The purchase price for such interests (the "Termination Payment") shall be an amount equal to ten times (10x) the cash due to P&G as Incentive Payments for the previous twelve (12)-month period, excluding any portion thereof which had been deferred from any period prior to said twelve (12)-month period. In no event, however, shall the Termination Payment be less than $250,000.

*Id.* At the time of termination, no Incentive Payments were "due" to P&G for the previous twelve month period because Camden Summit had not realized the Preferred Return.

4

Consequently, the Termination Payment amounted to $250,000 and Defendants offered to pay that sum.

Plaintiffs, however, objected to the sum mandated by the Agreement and filed the instant suit, contending (in contravention of the clear language of the Agreement) that the proper measure of the Termination Payment was not "ten times (10x) the *cash due* to P&G as Incentive Payments for the previous twelve (12)-month period," but ten times the amount *hypothetically accrued* during the twelve month period.  As explained below, this interpretation is contrary to the express terms of the Agreement, and Counts I and II should therefore be dismissed.

## **STANDARD OF REVIEW**

When assessing a motion to dismiss pursuant to 12(b)(6), this Court may consider the factual allegations in the complaint, any documents attached to or incorporated in the complaint, and matters appropriate for judicial notice.  *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D. C. Cir. 1997).  A complaint "should not be dismissed unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Communications Corp.***,** 16 F.3d 1271, 1276 (D.C. Cir. 1994).  "[T]he court must accept as true all facts alleged by the nonmoving party and must draw all inferences in favor of the nonmoving party." *Center for Law and Educ. v. Department of Educ.*, 396 F.3d 1152, 1156 (D.C. Cir. 2005).  "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276.[2]

---

[2]     The Agreement is governed by the laws of the District of Columbia. Ex. D, ¶ 18.

5

**ARGUMENT**

I. **UNDER THE TERMS OF THE AGREEMENT, THE TERMINATION PAYMENT IS $250,000**

In arguing that they are owed close to $900,000 – or ten times the Incentive Payment that *might* have been "due" had the Preferred Return been realized – Plaintiffs effectively ask the Court to redraft an unambiguous contract in order to vitiate its key terms. Doing so would not only twist the plain language of the Agreement beyond all recognition, it would lead to absurd results as well as subvert the carefully negotiated structure of the Agreement.

    A.    **The Phrase "Cash Due" Is Clear And Unambiguous**

"The construction of a written agreement is a question of law when its provisions are unambiguous, and thus in that instance the court, not the jury, interprets it." *Obelisk Corp. v. Riggs Nat'l Bank*, 668 A.2d 847, 853 (D.C. 1995). A contract is ambiguous only if it is susceptible to more than one reasonable interpretation. *Capital City Mortg. Corp. v. Habana Village Art & Folklore, Inc.,* 747 A.2d 564, 567 (D.C. 2000). "In order to determine whether a contract provision has more than one reasonable interpretation, it is necessary to look at the 'face of the language itself, giving the language its plain meaning …." *Id.* (quoting *Sacks v. Rothberg,* 569 A.2d 150, 154 (D.C. 1990)). A contract does not become ambiguous "merely because the parties disagree over its meaning, and courts are enjoined not to create ambiguity where none exists." *Washington Properties, Inc. v. Chin, Inc.,* 760 A.2d 546, 548 (D.C. 2000). *See also Bragdon v. Twenty-Five Twelve Assocs. Ltd. P'ship,* 856 A.2d 1165, 1170 (D.C. 2004) ("A court ... will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity ....") (internal citations omitted). And courts use dictionary definitions as a reliable method for determining a word's ordinary meaning. *See Edelen v. United States*, 560 A.2d 527, 530 (D.C. 1989).

The operative language of the Development Agreement states that the Termination Payment equals "ten times (10x) the *cash due* to P&G as Incentive Payments for the previous twelve (12)-month period …." Ex. D (emphasis added). The Agreement further dictates that the Incentive Payments are not due, if at all, until after Camden Summit's "receipt of a Ten Percent (10%) cumulative compounded annual return on its investment." *Id*. It is undisputed that Camden Summit never received this Preferred Return, just as it is undisputed that P&G never became entitled to the Incentive Payments. As a result, at the time of termination – or at any other time, for that matter – there was no "cash due to P&G as Incentive Payments."

Plaintiffs attempt to avoid this straightforward result by purposefully mischaracterizing the relevant metric as "Incentive Payments due," rather than "cash due … as Incentive Payments," as stated in the Agreement. *See* Compl. ¶¶ 23, 27, 28, 29 (substituting "Incentive Payments due" – a term that appears nowhere in the Agreement – for the actual term "cash due . . . as Incentive Payments). As an initial matter, the phrase "cash due … as Incentive Payments" must possess a meaning different from "Incentive Payments due," or the Agreement would have used Plaintiffs' simpler construction. This is not only dictated by common sense – it is D.C. law. *See Flynn v. Southern Seamless Floors, Inc.*, 460 F. Supp. 2d 46, 52 (D. D. C. 2006) ("Had the drafters of the clause contemplated the interpretation suggested by the defendant, they would much more likely have used the term 'an agreement' rather than 'a standard collective bargaining agreement.'").

Even the artificial "Incentive Payments due" construction concocted for the Complaint does not fully capture what Plaintiffs' interpretation requires as the proper metric – which is simply "Incentive Payments," without regard to whether they were "due" or not. This construction not only rewrites the Agreement as negotiated, it also violates a host of basic

7

contract law principles. First, it renders superfluous "cash due"; the phrase "cash due … as Incentive Payments" must certainly mean something different from simply "Incentive Payments." Second, it improperly interprets an undefined term ("cash due … as Incentive Payments") to mean exactly the same thing as a defined term ("Incentive Payments"). See Ex. D, ¶ 7(a). When interpreting contractual or statutory language, courts assume that drafters use a defined term in all provisions where its meaning is intended. *In re Simmons*, 765 F.2d 547, 55 (5th Cir. 1985) ("The term 'interest' is nowhere defined in the Code, but it would be odd if Congress had chosen that undefined term to mean 'lien,' when they could have used the defined term "lien" and avoided uncertainty.") (quotation omitted). "Cash due as Incentive Payments" therefore must contain a meaning separate from the defined term Incentive Payments.

By misquoting the contract, Plaintiffs attempt to avoid the obvious implications of the Agreement's use of the terms "cash" and "due" to modify "Incentive Payments." "Cash" is defined as "ready money; money or its equivalent paid promptly after purchasing." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 211 (1991). This term denotes an immediacy, and a liquidity, not present in Incentive Payments made contingent on the realization of a Preferred Return. Furthermore, Plaintiffs' interpretation of the contract relies upon a definition of "due" that disregards its common sense meaning. "Due" is defined as "owed or owing as a debt"; "having reached the date at which payment is required." *Id.* at 387. *See also Oxford English Dictionary* (2007) (defining "due" as "[t]hat is owing or payable, as an enforceable obligation or debt"); AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000)(defining due as "payable immediately or on demand"). "Cash due" therefore means payments that have

8

not simply accrued or been incurred, but are currently owed. Plainly, subordinated payments do not involve "cash due."[3]

Accepting Plaintiffs' counter-intuitive reading of "due" would contradict the Agreement by giving certainty to payments that are indisputably contingent. Under the Agreement, Incentive Payments are "payable in the subsequent year or years *so long as* the Preferred Return has been paid." *Id.* (emphasis added). Thus, because Camden Summit never achieved its Preferred Return, the Incentive Payments never came due. Yet Plaintiffs attempt to argue that Incentive Payments are "due" for the period in which they accrued, despite the fact that Defendants never owed these payments – and, in fact, may *never* have owed these payments even had P&G not exercised the Termination Provision. Despite Plaintiffs' contentions to the contrary, "due" and "accrued" are not synonymous. *See In re AOV Industries, Inc.*, 62 B.R. 968, 976 (Bankr. D. D.C. 1986) (holding that "a debt is incurred when the debtor first has any liability to the creditor; when the debtor is invoiced or when payment is actually 'due' is not material to the issue of when the debt was 'incurred'") (quotation marks omitted).

### B. Plaintiffs' Reading Of The Termination Provision Would Lead To Absurd Results

Plaintiffs' strained interpretation of the Development Agreement renders a portion of the Termination Provision superfluous. Substituting "incurred" or "accrued" in place of the term "due" leads to nonsensical results. As stated above, the Termination Payment equals ten times

---

[3] Realizing the weakness of their textual argument in the face of the Agreement's plain and unambiguous language, Plaintiffs quickly resorts to an argument based on their self-serving view of the parties' supposed "intent." Compl. ¶ 21. But District of Columbia law, which governs the Agreement, follows the "objective" method of contract interpretation, in which the language of a contract controls the "rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking …." *Tillery v. District of Columbia Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006).

the "cash due to P&G as Incentive Payments for the previous twelve (12)-month period, *excluding any portion thereof which had been deferred from any period prior to said twelve (12)-month period*." Ex. D, ¶ 7(a) (emphasis added). Under Plaintiffs' reading of the Termination Provision, there would be no need to exclude deferred Incentive Payments from more than twelve months prior because these payments by definition could not be "due" (or in Plaintiffs' view, would not have "accrued") "for the previous twelve (12)-month period" prior to Termination. Put differently, if "due" means accrued, payments deferred from 13 or more months prior to Termination would always accrue in a period prior to the 12 month period used to calculate the Termination payment. Because these payments would thus never factor into the Termination Payment calculation, there would be no need for the Termination Provision to exclude "any portion thereof which had been deferred from any period prior to said twelve (12)-month period." Plaintiffs' interpretation would thus improperly nullify the exclusionary language of the Termination Provision. *See Intercounty Const. Corp. v. District of Columbia*, 443 A.2d 29, 32 (D.C. 1982) (holding that interpretations that leave "language useless, inexplicable, inoperative, meaningless or superfluous … should be rejected").

On the other hand, this provision makes perfect sense if "due" is given its usual and customary meaning of "presently owed" rather than "accrued." In that case, deferred payments could be "due" for the period prior to Termination, if these payments accrued during an earlier period but were later owed because the Preferred Return was achieved. Then, the exclusion in ¶ 7(a) of the Agreement is necessary to make the Incentive Payment provision consistent with ¶ 7(c), which states that "Deferred Incentive Payment(s)" – i.e., Incentive Payments accruing before the current twelve month period – will no longer be due "after such time as either party exercises a Termination."

10

### C. Plaintiffs' Interpretation Would Result In A Termination Payment Far In Excess Of P&G's Remaining Interest In The Property

Plaintiffs concede that P&G's receipt of the Termination Payment is in consideration for and in full satisfaction of P&G's remaining interest in the Property. Compl. ¶ 19. Plaintiffs further acknowledge that after being paid $2.5 million for the development and acquisition rights, P&G's only remaining economic interest in the Property is its right to receive potential "Incentive Payments," representing a portion of the future profits of the Property as governed by paragraph 7 of the Agreement. *Id.* ¶ 11. Yet, Plaintiffs' proposed interpretation for some unexplained reason seeks to turn the entire profit/loss allocation embodied in the Incentive Payment structure on its head upon Termination.

In arguing that the Termination Payment should be calculated with reference to "Incentive Payments" accrued rather than "cash due … as Incentive Payments," Plaintiffs are attempting to shift the allocation of proceeds from the Property without a concurrent shift in the risk of owning and funding the Property. Plaintiffs' proposed construction is wholly inconsistent with the overall structure of the Agreement where Defendants have already purchased the development and acquisition rights from P&G and P&G's only remaining economic interest in the Property is the right to take a small piece of the proceeds if, and only if, Camden Summit – the owner of the Property – first takes its Preferred Return. By ignoring the subordination of its only remaining economic interest, Plaintiffs would have this Court award them an economic windfall in Termination that they admit they would never receive during the life of the Agreement. That cannot be.

The fallacy of Plaintiffs' proposed reading is readily apparent when it is put into practice. Under the contract, if the Property is profitable and Camden Summit receives its Preferred Return, P&G gets 1.75% of the gross proceeds as an Incentive Payment. If either party

11

terminates, P&G would get 10 times (i.e., 10 years' worth of) the Incentive Payments due over the prior 12 months in exchange for extinguishing its right to future Incentive Payments. This makes sense, as it allocates the risks and benefits borne by the parties in Termination in the same manner as it does during the life of the Agreement. If, however, Camden Summit does not receive its Preferred Return, P&G would not get 1.75% of the gross proceeds during the life of the Agreement because the Incentive Payments would be deferred. However, under Plaintiffs' theory, in the event of Termination, P&G would *still* get 10 times the Incentive Payments *even though it would not have been entitled to the payments during the life of the Agreement*. In this manner, an unprofitable investment bizarrely yields a profitable performance-based return for P&G simply by virtue of the fact that someone (i.e., P&G) chose to terminate. This does not make sense. P&G's theory would have Camden Summit bearing all the risks of owning and operating an underperforming Property while at the same time putting P&G in position to reap a financial benefit that the Property was not producing. Plaintiffs' obviously outcome driven theory is wholly inconsistent with the rest of the Agreement which has P&G profiting only after Camden Summit, as owner and operator, has profited. This is further evidence that Plaintiffs' proposed reading is simply wrong.

## CONCLUSION

For the foregoing reasons, Defendants Camden Summit and Camden respectfully request that Counts I and II of Plaintiffs' Complaint be dismissed with prejudice.

Dated:  May 25, 2007                                    Respectfully submitted,


    /s/ Allen M. Gardner
    _____
Allen M. Gardner (Bar. No. 456723)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Phone: (202) 637-2200
Fax: (202) 637-2201

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| P & G, LLC, <br><br>  and <br><br> FURIOSO DEVELOPMENT CORPORATION <br><br><br> Plaintiffs, <br>  v. <br><br><br> CAMDEN SUMMIT PARTNERSHIP <br><br>  and <br><br> CAMDEN SUMMIT, INC. <br><br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 1:07-CV-929-JR <br><br>    Oral Argument Requested |

## [PROPOSED] ORDER

This cause comes before the Court with respect to Defendants Camden Summit Partnership and Camden Summit, Inc.'s MOTION TO DISMISS COUNTS I AND II OF THE COMPLAINT. The Court being fully advised in the premises, IT IS HEREBY ORDERED that Defendants' motion is GRANTED.

The Court hereby Orders that Plaintiffs P&G, LLC and Furioso Development Corporation's Complaint, Counts I - II, is dismissed, with prejudice.

ENTERED:

By the Court:

Date: _____                    _____
                                    Judge James Robertson
                                    District of the District of Columbia


cc:

Allen M. Gardner
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004


David J. Frantz
Michael J. Conlon
Conlon, Frantz, Phelan, and Varma, LLP
1818 N. Street, N.W. Suite 400
Washington, D.C. 20036

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of May, 2007, a copy of the foregoing Motion to Dismiss Counts I and II of the Complaint, Memorandum of Law in Support of Defendants' Motion to Dismiss Counts I and II of the Complaint, and Proposed Order were served via CM/ECF and hand delivery on the following:

>David J. Frantz
>Michael J. Conlon
>Conlon, Frantz, Phelan, and Varma, LLP
>1818 N. Street, N.W. Suite 400
>Washington, D.C. 20036

>/s/ Allen M. Gardner
>_____
>
>Allen M. Gardner (Bar. No. 456723)
>LATHAM & WATKINS LLP
>555 11th Street, N.W.
>Suite 1000
>Washington, D.C. 20004
>Phone: (202) 637-2200
>Fax: (202) 637-2201
>
>*Counsel for Defendants*