UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| P & G, LLC,<br><br>and<br><br>FURIOSO DEVELOPMENT CORPORATION<br><br>Plaintiffs,<br>v.<br><br>CAMDEN SUMMIT PARTNERSHIP<br><br>and<br><br>CAMDEN SUMMIT, INC.<br><br>Defendants. | Civil Action No. 1:07-CV-929-JR<br><br>Oral Argument Requested |

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I AND II OF THE COMPLAINT**

Defendants Camden Summit Partnership ("Camden Summit") and Camden Summit, Inc. respectfully submit this Memorandum of Law in Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss Counts I and II of the Complaint of P&G, LLC ("P&G") and Furioso Development Corporation ("Opposition or Opp.").

## INTRODUCTION

Defendants' reading of the Termination Provision gives meaning to every word and phrase, accords with overall structure of the Development Agreement and comports with

common sense. In marked contrast, Plaintiffs' readings of the Termination Provision render key contractual language superfluous, conflict with the structure of the Development Agreement and strain common sense.

Notwithstanding Plaintiffs' protestations to the contrary, there is only one reasonable reading of the Termination Provision: A minimum payment of $250,000 is due to P&G at termination unless Camden Summit has achieved its Preferred Return such that ten times the preceding twelve months' worth of cash due as Incentive Payments is greater than $250,000. And this straightforward reading of the text is easily applied to the undisputed facts of this case: Camden Summit owes P&G the contractual minimum Termination Payment because no cash was due as Incentive Payments during the twelve-month period preceding P&G's termination because Camden Summit never achieved its Preferred Return.

Plaintiffs' first tack in responding to the Motion to Dismiss is to ignore the merits of this common sense interpretation altogether and instead attempt to change the playing field by improperly endowing the Complaint with legal conclusions and the Opposition with factual allegations not pled. Plaintiffs have got it backwards; their "factual allegations" cannot supersede the wholly *legal* question of what the plain language of the Agreement means, nor can they substantiate their Opposition with facts that they were (and remain) unable to allege in the Complaint.

And when Plaintiffs do get to the merits, they fare no better. Rather than engaging Defendants' reading of the Agreement, they mischaracterize it and proffer their own interpretations that, if accepted, would rewrite the carefully negotiated language of the Termination Provision by excising key components. Further, Plaintiffs fail to address why the Court should accept their proposed interpretations, which are entirely at odds with the structure

of the Agreement, when Defendants' reading harmonizes the Termination Provision with the rest of the Agreement.

The drastic rewrites suggested by Plaintiffs are improper and unnecessary, particularly where, as here, the actual bargained-for Agreement is clear from the unambiguous text. Only the minimum Termination Payment is due because Camden Summit never achieved its Preferred Return, which is a condition precedent to any Incentive Payments becoming due during the twelve months preceding termination.

The Court should dismiss counts I and II of Plaintiffs' Complaint as a matter of law.

## ARGUMENT

**I.  PLAINTIFFS MAY NOT AVOID DISMISSAL BY PLEADING LEGAL CONCLUSIONS OR RELYING ON FACTS NOT ALLEGED IN THE COMPLAINT**

At the outset of its Opposition, Plaintiffs take the position that Defendants' Motion to Dismiss is "grounded on disputed factual allegations that are not pled in the complaint." Opp. at 2. Chief among these supposed "disputed factual allegations" is Defendants' assertion that "no Incentive Payment ever became due to P&G under the Agreement." Opp. at 3-4, citing Def. Motion To Dismiss at 4. According to Plaintiffs, this assertion improperly contradicts Plaintiffs' "allegation" that "the Incentive Payments due for the twelve month period prior to the [Termination] notice, i.e. October 2005 through September 2006 were approximately $89,754.16." Complaint ¶ 23; Opp. at 3. Yet even a cursory examination of these "allegations" reveals that they are, in fact, legal contentions. More to the point, they embody *the* legal contention in that their truth or falsity depends on the proper interpretation of the term "due" in the Termination Provision. While it is true that this legal point is in dispute, it is obviously not the case that this dispute precludes dismissal under Fed. R. Civ. P. 12(b)(6). To the contrary, such legal disputes are quintessentially within the purview of a motion to dismiss. *See Kingman*

3

*Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) ("A Rule 12(b)(6) motion is intended to test the legal sufficiency of the complaint.").

Nor is it the case, as Plaintiffs claim (at 3-4), that the legal dispute must be resolved in Plaintiffs' favor simply because they have "pled" that their legal interpretation is the correct one. Plaintiffs cannot force Defendants or this Court to accept their misreading of the contract by incorporating their tortured definition of the term "due" into the Complaint. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (holding that "the court need not accept legal conclusions cast in the form of factual allegations.") (quotation marks omitted).

In addition, this Court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint …." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). As discussed in Section II, *infra*, Plaintiffs' allegation that an Incentive Payment of $89,754.16 was due for the period prior to Termination is contradicted by the express terms of the Development Agreement, attached to the Complaint. Under the Agreement, Camden Summit owed Incentive Payments only "so long as the Preferred Return has been paid." Exhibit D, ¶ 7(c). Camden Summit never achieved its Preferred Return, and Plaintiffs cannot contradict the Development Agreement by alleging that Incentive Payments were due.[1]

---

[1] While not entirely clear, the Opposition also seems to suggest that Plaintiffs may now be trying to claim that Camden Summit *did* achieve its Preferred Return. *See* Opp. at 4. Plaintiffs' Complaint, however, makes no such allegation. If this is truly their theory – which seems unlikely given that the remainder of their Opposition is spent arguing that P&G was entitled to Incentive Payments despite the fact that the Preferred Return was never met – then Plaintiffs are required to allege that the Preferred Return was paid in order to show entitlement to relief. *See Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (holding that dismissal is proper if plaintiff fails "to allege all the material elements of his cause of action.") (D.C. Cir. 2001) Plaintiffs cannot amend their Complaint in an opposition to a motion to dismiss. *Arbitraje Casa de Cambio, S.A. v. United Postal Serv.,* 297 F.Supp.2d 165, 170 (D.D.C. 2003) (holding that allegations not contained in the complaint cannot be considered in deciding the motion to dismiss).

II. **PLAINTIFFS' IDIOSYNCRATIC INTERPRETATION OF "DUE" TO MEAN "ACCRUED" IS AT ODDS WITH BOTH THE COMMONLY UNDERSTOOD MEANING OF THE TERM AND THE AGREEMENT ITSELF**

When Plaintiffs do address the merits of Defendants' motion, they spend several pages wrestling with Defendants' definition of "due." Their first problem is that they cannot seem to agree on what Defendants' definition actually is. At first, they claim that Defendants are contending that "due" is synonymous with "paid." Opp. at 5. Later in their brief, however, they change course to claim that Defendants interpret "due" to mean, in essence, "payable, but not yet paid." Opp. at 9-10. Plaintiffs' Opposition thus depends upon two mutually exclusive characterizations of Defendants' position: (1) that due means paid, and (2) that due means not paid. Of course, neither characterization is correct, and Plaintiffs' internally inconsistent straw-man arguments actually further demonstrate the correctness of Defendants' interpretation.

  A. **Incentive Payments Are "Due" Under The Agreement Once The Preferred Return Is Met**

The Development Agreement permits only one reasonable interpretation of the phrase "cash due … as Incentive Payments" and it bears no relation to whether payment has accrued, been paid, or *not* been paid. As stated in the Motion to Dismiss, Incentive Payments are "due" for a particular period when it becomes certain that they will be paid. Motion to Dismiss at 9. Before that event, while potential payments may accrue, they do not become "due" because Camden Summit may never actually owe them. In the case at bar, no Incentive Payments ever came due because the Preferred Return was never realized and the Incentive Payments were therefore subordinated and deferred—i.e., not "due." An Incentive Payment can therefore be considered "due" only if it is no longer subordinated, regardless the actual timing of cash changing hands. Motion To Dismiss at 6-7.

Far from contradicting this interpretation, the cases cited by Plaintiffs actually confirm it. In *In re Vause*, 886 F.2d 794, 796 (6th Cir. 1989), the Sixth Circuit held that "the word 'due' has two possible meanings – 'matured and payable' or 'owing.'" For example, a mortgage payment is "due" at the end of the month in the sense that it is "matured and payable" at that point, while the outstanding principle "due" on the mortgage refers to the larger debt "owed" by the mortgagee. In citing this case, Plaintiffs apparently fail to realize that *both* of these characterizations favor Defendants' view of the Agreement. The Incentive Payments never *matured* or became *payable* because the contingency upon which the "payability" depended – the Preferred Return – never materialized. By the same token, Camden Summit did not *owe* any Incentive Payments because whatever *potential* existed for those payments was contingent, and thus no "debt" existed. Both of the Sixth Circuit's definitions of "due" presuppose a "state of indebtment" involving a *certain* liability—regardless of whether it is due presently ("matured and payable") or at a later date ("owed"). *Id.* at 799. That "certain debt" is not present here. The mere future possibility that P&G might have been entitled to Incentive Payments does not qualify such payments as a debt capable of being "due."

Furthermore, while Plaintiffs argue that the meaning of "due" varies with the context, "there can be no serious doubt as to [due's] meaning" in the context of the Agreement. *Edelen v. First Nat'l Bank*, 139 Md. 422, 425 (Md. 1921) (interpreting "due" in the context of a promissory note; holding that a "negotiable instrument is not 'due' until it matures or becomes payable according to its terms."). *Edelen*, another of Plaintiffs' cases, supports the position that the term "due" can possess a clear and natural interpretation based solely on the wording of the contract. The term "due" is but one part of the phrase "cash due … as Incentive Payments."

6

Although Plaintiffs attempt to isolate this term, when placed in context, its meaning is as clear as in *Edelen*.

In their Opposition, Plaintiffs attempt to characterize Defendants' definition of due as, in essence, "payable but not yet paid." *See* Opp. at 9. Plaintiffs rightly point out that such a definition would be ridiculous because Camden Summit could thereby avoid having to include the Incentive Payments in the calculation of the Termination Payment by simply *paying* all outstanding Incentive Payments as soon as the Preferred Return is achieved. *Id.* As made clear above and in the Motion to Dismiss, this is not the correct interpretation of due nor is it Defendants' interpretation. The Development Agreement specifies that Termination Payments are based on "the cash due to P&G as Incentive Payments *for* the previous twelve (12)-month period …." Ex. D, ¶ 8 (emphasis added). The actual disbursement of Incentive Payments does not change the fact that these funds were "due" for a certain twelve month period. There is nothing temporal about Defendants' interpretation of the term; money owed during a twelve-month period would still be considered "due" *for* that period even if it was already paid.

### B. Plaintiffs' Interpretation of the Termination Provision Renders Key Contractual Language Superfluous

Plaintiffs have failed to articulate a coherent reading of the Termination Provision that both supports their theory that "due" is equivalent to "accrued" and gives meaning to every word of the Termination Provision the parties negotiated. Like the Complaint, Plaintiffs' Opposition contains a purpose-driven interpretation that produces superfluous language in the Termination Provision. As drafted and bargained for by the parties, the Termination Provision reads:

> The purchase price for such interests (the "Termination Payment") shall be an amount equal to ten times (10x) the cash due to P&G as Incentive Payments for the previous twelve (12)-month period, excluding any portion thereof which had been deferred from any period prior to said twelve (12)-month period.

As explained in the Motion to Dismiss, if "due" means something akin to accrued, it would be unnecessary for the Termination Provision to exclude from the calculation of "cash due to P&G as Incentive Payments" for the twelve-months prior to Termination, "any portion thereof which had been deferred from any period prior to" that twelve-month period.  *See* Ex. D, ¶ 8; *see also* Motion To Dismiss at 10.  Because any deferred Incentive Payments would, by definition, not have accrued in the twelve months prior to Termination, the language exempting those incentive payments from calculation in the Termination Payment is entirely redundant.  To give the meaning advanced by the Complaint, the Termination Provision would have to be rewritten as follows:

> The purchase price for such interests (the "Termination Payment") shall be an amount equal to ten times (10x) the cash ~~due~~ [accrued] to P&G as Incentive Payments for the previous twelve (12)-month period[.]~~, excluding any portion thereof which had been deferred from any period prior to said twelve (12)-month period.~~

Because the interpretation set out in the Complaint requires excising a key provision, it must fail as a matter of law.  *See Intercounty Const. Corp. v. District of Columbia*, 443 A.2d 29, 32 (D.C. 1982) (holding that interpretations that leave "language useless, inexplicable, inoperative, meaningless or superfluous … should be rejected").

Recognizing this fatal defect, the Opposition offers another interpretation.  But Plaintiffs' latest interpretation fares no better than the first as it renders another segment of the Termination Provision entirely superfluous.  According to Plaintiffs' most recent interpretation, Incentive Payments that were deferred from earlier periods are still considered "due … for the previous twelve (12)-month period prior" to Termination because a debt "remains 'accrued' or 'due' until it is paid."  Opp. at 8.  In other words, Plaintiffs now contend that the amount due to P&G "as Incentive Payments for the previous twelve (12)-month period" includes not just the Incentive

8

Payments earned as a result of the Property's performance for the prior twelve month period, but *all* Incentive Payments earned to date.

This explanation does even greater violence to the language of the Termination Provision than the interpretation advanced by the Complaint. Most obviously, it creates another significant redundancy in the provision. If, as Plaintiffs argue, a deferred Incentive Payment remains accrued, and therefore due, until it is paid, there is no reason for the first clause of the provision to specify "for the previous twelve (12)-month period" because *every* Incentive Payment would be considered accrued for this period, regardless of which period actually generated the payment. Plaintiffs' new interpretation would require another (albeit different) rewriting of the Termination Provision that drops other key terms for which the parties bargained:

> The purchase price for such interests (the "Termination Payment") shall be an amount equal to ten times (10x) the cash ~~due~~ [accrued] to P&G as Incentive Payments ~~for the previous twelve (12)-month period,~~ excluding any portion thereof which had been deferred from any period prior to ~~said~~ [the previous] twelve (12)-month period.

The fundamental flaw in Plaintiffs' interpretations is inescapable; their readings necessarily compel them to ignore at least one of the two critical clauses of the Termination Provision. Plaintiffs' attempts to justify its definition of the term "due" must fail because they render language carefully drafted by the parties superfluous.

### III. PLAINTIFFS' INTERPRETATION IGNORES THE STRUCTURE OF THE AGREEMENT

Plaintiffs provide no response to the question of why the Agreement should be interpreted to provide a windfall to P&G in Termination, other than to glibly remark (at 11) that the parties may have intended to do so and that such an intent may not be resolved in the context of a motion to dismiss. Plaintiffs are wrong. Absent ambiguous language in the Agreement, the intent of the parties is manifested in the terms and conditions of the contract itself. *DSP Venture*

9

*Group, Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003) ("the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract.") (alteration in original).  The meanings of those terms and conditions present a question of law, *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006), and Plaintiffs may not escape them merely by alleging an intent that contradicts that the plain language of the Agreement.

In interpreting the Termination Payment, Plaintiffs purport to apply the text of the Agreement but ignore its key terms.  For example, they contend (at 11) that the Termination provision of the contract does not refer directly to the Preferred Return, and that therefore the achievement of the Preferred Return is irrelevant in calculating the Termination Payment.  This simplistic reading is misleadingly incomplete because it ignores the fact that the Termination Payment is entirely dependent on the amount of "cash due … as Incentive Payments," Ex. D, ¶ 8, which in turn depends on whether the Preferred Return has been realized.  *Id.* ¶ 7.  Plaintiffs' argument has the same logical force as an assertion that the *gross revenue of the Property* is irrelevant to the computation of the Termination Payment since it too is not specifically mentioned in the Termination provision.  *Id.* ¶ 8.  *But see id.* ¶ 7(a) (defining the Incentive Payment as 1.75% "of the gross revenue of the Property.").  Both statements are absurd.

Plaintiffs concede, as they must, that P&G's only remaining interest in the Property prior to termination was its *contingent* right to a percentage of the Property's revenue.  Compl. ¶ 11.  They argue, however, that this interest expands upon termination to encompass the entirety of the potential Incentive Payments – notwithstanding the fact that the goal that was to be "incentivized" was never actually reached.  In support of this perverse interpretation, Plaintiffs can offer only its argument that this must be a "common" arrangement, and that "[t]here is no

10

rule which dictates that receipt or non-receipt of income from a property determines the economic interest of a party in that property." Opp. at 12. Plaintiffs' views on what the contract *hypothetically could have said* is hardly probative when compared to what the contract *actually says*. Because, of course, the value of P&G's interest is dictated by the Agreement itself. And the Agreement fixes P&G's interest at 1.75% of the gross proceeds *subject to Camden Summit's Preferred Return*. Ex. D, ¶ 7.

Moreover, the structure of the Agreement absolutely refutes this notion. *Phenix-Georgetown, Inc. v. Chas. H. Tompkins Co.*, 477 A.2d 215, 225 (D.C. 1984) (holding that "the general rule is that contracts will be read as a whole, and every part will be interpreted with reference to the whole"). Plaintiffs fail to explain how the Agreement could sensibly be read to refuse to reward P&G for the Property's under-performance during the lifetime of the contract but suddenly reward it for that same poor performance upon termination. Calculating the Termination Payment without regard to whether Camden Summit has realized its Preferred Return effectively severs P&G's potential profits from the profits of the Property and departs from any common sense understanding of the term "incentive."

The following hypothetical example illustrates the point. Imagine that Camden Summit's Preferred Return was $5 million and that the Property produced $20 million in gross revenue at an expense of $18 million. While the Agreement was in operation, P&G would not receive Incentive Payments because the Preferred Return would not be met. Plaintiffs do not (and cannot) dispute this. Yet under Plaintiffs interpretation, P&G could nonetheless force a termination and collect a profit of $3.5 million (1.75% of $20 million multiplied by 10) despite the fact that Camden Summit – the owner/operator and holder of the "preferred" interest – only recognized a $2 million return. Plaintiffs' interpretation becomes even more absurd if you

11

reverse the hypothetical revenue-to-expense ratio and consider the possibility of the Property costing more in expenses ($20 million) than it produced in revenue ($18 million).  In that case, under Plaintiffs' reading P&G would still realize a $3.15 million *profit* by terminating (1.75% of $18 million multiplied by 10), even though Camden Summit would suffer a $2 million *loss*.  As this simple hypothetical demonstrates, Plaintiffs' interpretation of the Termination Payment conveniently ignores the Preferred Return entirely and depends on only the Property's gross revenue – *without regard to the Property's expenses.*  This bizarre outcome is antithetical to the structure of the Agreement, which plainly dictates that P&G's sole remaining interest is subordinate to Camden Summit's Preferred Return and contingent on the profitability of the Property.

   Plaintiffs argue (at 12) that by asserting that P&G is not entitled to its Incentive Payments in the event that it terminates before those Incentive Payments have become due (i.e., before Camden Summit has received its Preferred Return), Defendants presuppose that the Property will never yield the Preferred Return.  Defendants' interpretation depends on no such assumption (although P&G may have made just such an assumption when it chose to exercise the Termination Provision).  Upon termination, P&G's interest in the Property is extinguished, so whether the Property ultimately achieves the Preferred Return (whether from rental cash flow or sale) is irrelevant.  P&G's interest in the Property for the purpose of calculating the Termination Payment is measured at the time either party chooses to terminate (considering Incentive Payments due for the previous twelve month period).  The Agreement makes no provision for P&G to retain any future interest in the Property post-termination.  Plaintiffs' contention that P&G's Termination payment should not be "discounted" by the fact that no Incentive Payments have yet become due because "P&G is likely to receive those [Incentive] payments in the future"

12

makes no sense given that P&G relinquished all entitlement to Incentive Payments upon termination. Ex. D, ¶ 7(c).[2]

## CONCLUSION

Whereas the plain text of the Termination Provision unambiguously supports Defendants' reading, there is no textual support for the various "interpretations" articulated by Plaintiffs. As a matter of law, the Termination Provision entitles P&G to no more than the $250,000 already offered by Camden Summit and Defendants' Motion to Dismiss Counts I and II of the Complaint should be granted.

Dated: June 19, 2007                                Respectfully submitted,

                                                        /s/ Allen M. Gardner
                                                    Allen M. Gardner (Bar No. 456723)
                                                    LATHAM & WATKINS LLP
                                                    555 11th Street, N.W.
                                                    Suite 1000
                                                    Washington, D.C. 20004
                                                    Phone: (202) 637-2200
                                                    Fax: (202) 637-2201

                                                    *Counsel for Defendants*

---

[2] Plaintiffs actually concede this point later by acknowledging that P&G faced the choice under the Agreement of "either continu[ing] to receive Incentive Payments for its 1.75% interest in the property … or it could elect to receive the Termination Payment in lieu of those Payments and give up its right to all past unpaid Payments and all future Payments." Opp. at 13.

## CERTIFICATE OF SERVICE

I, Allen Gardner, hereby certify that on this 19th day of June, 2007, that I filed the foregoing Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss Counts I and II of the Complaint using the Court's CM/ECF system, which will automatically send notification of the filing to the following:

> David Joseph Frantz
> dfrantz@conlonfrantz.com

Dated:  June 19, 2007                                  Respectfully submitted,


          /s/ Allen M. Gardner
Allen M. Gardner (Bar No. 456723)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Phone: (202) 637-2200
Fax: (202) 637-2201

*Counsel for Defendants*